```
                IN THE UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF ARKANSAS
                         WESTERN DIVISION


  UNITED STATES OF AMERICA,

                    Plaintiff,    No.  4:09CR00304-01 JMM


  v.


  JARED ROSE,                          Wednesday, May 26, 2010
                    Defendant.         Little Rock, Arkansas
                                       2:37 p.m.
```

**TRANSCRIPT OF SENTENCING HEARING**
BEFORE THE HONORABLE JAMES M. MOODY,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

On Behalf of the Plaintiff:

    MS. STEPHANIE MAZZANTI, Assistant United States Attorney
      United States Attorney's Office
      Eastern District of Arkansas
      Post Office Box 1229
      Little Rock, Arkansas 72203-1229

On Behalf of the Defendant:

    MS. LISA G. PETERS, Assistant Federal Defender
      Federal Public Defender Office
      The Victory Building
      1401 West Capitol Avenue, Suite 490
      Little Rock, Arkansas  72201


Defendant present

    Proceedings reported by machine stenography; transcript prepared utilizing computer-aided transcription.


                Elaine Hinson, RMR, CRR, CCR
                United States Court Reporter

```
 1                        P R O C E E D I N G S
 2            THE COURT:  This is case No. 4:09CR304.  It's the
 3   United States against Jared Rose.  Mr. Rose is present with his
 4   attorney, Ms. Lisa Peters.  The government is represented by Ms.
 5   Stephanie Mazzanti.
 6        Mr. Rose, you were charged in Count 1 of a five-count
 7   indictment with conspiracy to manufacture methamphetamine on the
 8   premises in which an individual under the age of 18 was present
 9   or resided.  And that occurred on or before July of 2007.
10        Count 2 of that indictment charged you with possession with
11   intent to distribute methamphetamine on the premises in which an
12   individual under the age of 18 was present or resided.
13        Count 3 charged you with possession of chemicals and
14   equipment utilized in the manufacture of methamphetamine.
15        Count 4 charged you with possession of a firearm in
16   furtherance of drug trafficking.
17        And the date for Counts 2, 3, and 4 was about July the 7th
18   of 2009.
19        Then, finally, Count 5 charged you with possession of
20   chemicals and equipment utilized in the manufacture of
21   methamphetamine on August the 19th of 2009.
22        There was also a forfeiture allegation in the indictment
23   which listed two semiautomatic firearms.
24        Then on March the 11th of 2010 you were here with Ms.
25   Peters representing you.  You had entered into a written plea
```

1  agreement before coming to court, and you pled guilty to Count 1
2  of the indictment as well as the forfeiture allegation.  And
3  when I accepted your plea, then the remaining counts were
4  dismissed on the motion of the assistant U.S. attorney.  You
5  stipulated to a base offense level of 34 and a career offender
6  status, no enhancements under 21 U.S. Code Section 851, and a
7  two-level reduction for acceptance of responsibility, and the
8  possibility of a third point.
9        Would he get the third point here today, Ms. Mazzanti?
10           MS. MAZZANTI:  Yes, Your Honor.  The government moves
11  for the third point.
12           THE COURT:  Okay.  That motion will be granted.  So,
13  Mr. Rose, you will be entitled to a third point for acceptance
14  of responsibility when I calculate the guideline range, and that
15  you also agree that the amount of the restitution payable would
16  be approximately $1,391.50.  That's the history of your case up
17  to this point.  And as I explained to you when you changed your
18  plea from not guilty to guilty, we would be back here today for
19  sentencing.
20     I've reviewed the presentence report.  I've also received a
21  number of letters that were written on your behalf, which I have
22  read.  And I'll factor all of that into consideration of what I
23  think the appropriate sentence should be.
24     Ms. Peters, you had, I believe, one objection in addition
25  to the third point, which is now moot.  Did you have an

1   objection to the presence report?

2           MS. PETERS:  Your Honor, the only other objection that
3   we had was regarding the identifying data.  We wanted it listed
4   somewhere.  We understand that the NCIC or ACIC may record other
5   identifying data as far as the alternate dates of birth for Mr.
6   Rose.  But Mr. Rose asserts that he has never used an alternate
7   date of birth.  And we would just like it listed in the report
8   that he has never personally used an alternate date.

9           THE COURT:  Okay.  We'll make that adjustment then to
10  the presentence report.

11          MS. PETERS:  Thank you, Your Honor.  There were no
12  further objections.

13          THE COURT:  Ms. Mazzanti, did you have any objections?

14          MS. MAZZANTI:  No, Your Honor.

15          THE COURT:  All right.  Thank you.

16      Mr. Rose, I'm going to calculate a guideline range now and
17  explain to you what my options are for sentencing.  We start
18  with a base offense level of 26.  And that's based on Guideline
19  Section 2D1.1(a)(5).  And a firearm was possessed in connection
20  with a drug trafficking activity so that there's a two-level
21  enhancement.  And then you possessed with intent to manufacture
22  and manufactured methamphetamine on the premises where minor
23  children were present or resided, so there's another three-level
24  enhancement.  And then you get three points for acceptance of
25  responsibility.

1          However, because you are a career offender; that is, you
2    were at least 18 years old at the time of this offense, the
3    offense of conviction is either a felony or a crime of violence,
4    and you had at least two prior felony convictions of either a
5    crime of violence or a controlled substance offense, you are a
6    career offender.  And I find that all of those criteria have
7    been met.  That would put you then at an offense level of 34.
8    And you get three points for acceptance of responsibility, so
9    there's a total offense level of 31.  And you had 20 criminal
10   history points, which puts you in a criminal history category of
11   VI.
12        So, Ms. Peters, we have a 31 and a VI.  Any objection to
13   that?
14             MS. PETERS:  No, Your Honor.
15             THE COURT:  And it does not appear that Mr. Rose could
16   pay a fine.
17        These are my options then, Mr. Rose.  The statute provides
18   for a term of imprisonment of not less than five years nor more
19   than 40 years.  So there's a mandatory minimum five-year
20   sentence.  And then pursuant to 21 U.S. Code Section 860a, an
21   additional sentence of not more than 20 years consecutive is
22   required.
23        Then under the guidelines, for a total offense level of 31
24   and a criminal history of VI, the guideline imprisonment range
25   would be 188 to 235 months.

1     The statute requires a term of supervised release of at
2  least four years.  And that's also the case under the
3  guidelines.
4     There's no probation under either the statute or the
5  guidelines.
6     The statute would permit a fine up to $2 million with a
7  special assessment of a hundred dollars, and the fine range
8  under the guidelines would be from 15,000 to 2 million.  There's
9  not going to be a fine, but there will be a $100 special
10 assessment, which is mandatory.  There is restitution also which
11 is mandatory in the amount of $1,391.50.  That would be payable
12 to the DEA Headquarters to the attention of Betty Myers in
13 Springfield, Virginia.
14    Any objection to those options?
15         MS. PETERS:  No, Your Honor.
16         THE COURT:  Ms. Peters, would you like to say
17 something for Mr. Rose?
18         MS. PETERS:  Your Honor, on behalf of Mr. Rose, this
19 is a very difficult case.  Of course, as the Court has pointed
20 out, Mr. Rose is looking at a minimum of five years and a
21 maximum of 40 under the statute and then not more than 20 years
22 consecutive for having the kids on the premises.
23    First of all, Your Honor, I would like to recognize in the
24 courtroom his mom is here, his stepfather.  And I believe two of
25 his friends are here as well, Brian Rose -- Brian Ross and

1  Justin -- Jason Phillips.  His grandmother wanted to be here,
2  Your Honor, but some things happened, and she could not make it.
3  But I wanted the Court to understand and know that he has a
4  supportive family yet still through it all.
5      Your Honor, I think what the crux of the problem is is Mr.
6  Rose is a career offender.  Because of the criminal history,
7  he's looking at such a horrible sentence, he's facing such a
8  horrible sentence.  I look at the criminal history, Your Honor.
9  Of course, there's a lot of the drug issue involved in the
10 criminal history.  The majority of his crimes in the beginning
11 of his criminal career started occurring at the age of 24.  And
12 it looks like he amassed the majority of the criminal history
13 during the ages of 24 and 25.  Mr. Rose is 34 years of age now,
14 so approximately ten years ago is when he amassed the majority
15 of this that's come back to haunt him today.
16     Since Mr. Rose has been locked up, Your Honor, on this
17 instant offense -- and he's been locked up since 2009 -- - he
18 has lost his wife.  She was there with him and the children.
19 And he has lost her while incarcerated.  As well, he has lost
20 his own children as a result of this offense.  Of course, we may
21 not know what it feels like to have children taken away under
22 these types of situations.  But Mr. Rose has had plenty of time
23 to think about it while he's been sitting in the jails.  When
24 I've gone to talk to him, his concern has been about his
25 children and their well-being and how he takes full

1  responsibility, how he has messed up.  He loves his children.
2  That's the word that I get from talking with him, talking with
3  his mother.  He loves the children.  He did, when they were in
4  the house, he does admit that they were in the house when he was
5  involved in this activity.  But he tried to put towels under the
6  door, and the kids were not around.  They were on the premises,
7  but they were not around when he was doing that.  And I think
8  that that's important to point out to the Court.
9       When I looked at this, Your Honor -- of course, knowing the
10 history of Mr. Rose, there are mental health issues involved
11 here, not enough to say that he was incompetent and did not know
12 what he was doing.  But there have been mental health issues
13 occurring with Mr. Rose over the years.  And I think that those
14 are evident in the presentence report.
15      As well, Your Honor, drug issues, anytime you mix mental
16 health issues and drugs, you have a formula for disaster.  And
17 that's what has happened with Mr. Rose.  But Mr. Rose will talk
18 about this more so.
19      But there's something in the presentence report.  Dr. Davis
20 was one of the physicians that Mr. Rose voluntarily went to and
21 asked Dr. Davis not to give him any type of narcotics because
22 Mr. Rose himself saw that that was the crux of his problem, the
23 drugs.  Whether they were legal or illegal, he did not need
24 them.  I think that speaks volumes for Mr. Rose.
25      Your Honor, in looking at a sentence on him, for him --

1    first of all, I know under the guidelines he's looking at 188 to
2    235 months.  180 months is 15 years, Your Honor.  The statute,
3    again, is five years minimum to 40.  So that five years is a
4    long way from that 15-year minimum.
5         I know that the probation officer already factored in under
6    paragraph 13 the specific offense characteristics.  She already
7    factored in a three-level enhancement pursuant to 2D1.1(b)(10)
8    because Mr. Rose possessed with intent to manufacture and
9    manufactured methamphetamine on premises where minor children
10   were present or resided.  There's a three-level enhancement
11   already factored in.
12        What I did, Your Honor, was I took that three-level
13   enhancement out of the offense level, which would drop the
14   offense level down to a level 28.  Of course, with the same
15   criminal history category, he's at a criminal history guideline
16   range -- excuse me -- of 140 to 175 months if that three-level
17   enhancement is not factored in.  That's a difference of 48
18   months on the low end.  So with this three-level enhancement
19   added in, it's an additional minimum of four years that Mr. Rose
20   is facing.
21        In looking at the factors under 3553(a), Your Honor, I know
22   that the Court has to sentence Mr. Rose to a sentence that's
23   sufficient but not greater than necessary.  And I'm asking the
24   Court to consider a sentence that's sufficient but not greater
25   than necessary.  The guidelines itself calls for a minimum of

1  five years.  Excuse me.  The statute calls for a minimum of five
2  years.  I'm not asking the Court to simply give him the five
3  years.  I know that his criminal history dictates that he get
4  more than that, but what is sufficient, Your Honor, but not
5  greater than necessary.
6      If the Court looks, the minimum of the guideline range is
7  15 years and eight months.  I would submit to the Court, based
8  on what we've got, that that's more than sufficient and even
9  greater than necessary.
10     And the reason that I say that is, looking at the issues
11 that Mr. Rose has, what could prison do for him?  First of all,
12 we know that he needs the RDAP program because of the drug
13 history that he has.  That RDAP program is for a year.  So we
14 have to make sure that he's locked up for at least a year to get
15 that.  He also needs some vocational training.  Looking at his
16 work history, it would be useful for him to get some type of
17 training so that when he gets back out he doesn't resort to the
18 same things that he has been going back to in the past.  He can
19 get that vocational training in less than the 15 years, Your
20 Honor, but greater than the five years.  As well, Your Honor, he
21 needs to be rehabilitated.  He needs the mental health
22 counseling.  He needs the drug issues.  He needs vocational
23 training, and he needs rehabilitation.  That could be done in
24 less than the 15 years that the guidelines recommend.  He needs
25 punishment.  We understand that, and we are willing to accept

1   the punishment, Your Honor.  Sufficient, but not greater than
2   necessary is what I'm requesting.
3       We don't want to make Mr. Rose a hardened criminal, Your
4   Honor.  There are redeeming qualities I think in almost all of
5   us, and I don't see Mr. Rose as being any different.  He's lost
6   his family.  He's lost his wife.  He's lost his children.  Give
7   him something to live for.  Give him some type of hope.  He's a
8   34-year-old man that made several mistakes ten years ago.  I'm
9   asking the Court to consider a sentence over 15 years, a
10  sentence of 15 years and more would only tend to harden him and
11  not rehabilitate him.
12      I believe that that's all that I have to say on Mr. Rose's
13  behalf, Your Honor.  I would just simply ask the Court for those
14  things sufficient but not greater than necessary.
15          THE COURT:  All right.  Thank you, ma'am.
16      Mr. Rose, would you like to make a statement?
17          THE DEFENDANT:  Yes, sir.
18      Your Honor, Ms. Peters touched on a lot of what I'm facing.
19  The reality is is I sat down and wrote pages and pages of what I
20  wanted to say.  And everything I wrote down I seen you shooting
21  down because, just like she said, I love my family and my
22  children.  If I was on trial for that today, I probably wouldn't
23  get convicted because if I was, if I did, if I showed that, I
24  wouldn't have been here, and I wouldn't have done the things
25  that tore my family apart.

1     There's two different groups of people out there in the
2  audience.  One of them is my wife's father, who has a real ill
3  feeling towards me, and my family, who loves me.  And they have
4  seen both sides.  If both of them got to speak, you would see
5  from one version who I am when I'm on dope.  I mean, I'm an
6  addict, and there's no doubt about it.  And I've fought with it.
7  The other side, the people that have seen me also when I'm not.
8  And my PSI, I know it shows in there ten years of trouble, but
9  also excess time of drug use.  This is the first time that I've
10 ever sought help that wasn't court ordered, probation ordered,
11 to get out of jail, to get out of trouble.  I saw it tearing my
12 family apart, and I tried to stop it.  I was too late.
13    And I don't think I'm a lost cause, you know.  There's some
14 letters in there and some people standing with me from the past
15 four years when I did well.  And they saw the kind of person
16 that I could be, and I thank them for that.  But I'm not a lost
17 cause.  There's some -- I made some mistakes definitely.  Doing
18 this around my children was the most idiotic thing I ever done,
19 and I can't take it back.  But she said hope.  They say hope is
20 the food of faith and without hope faith dies.  So I'm hoping
21 today that I don't go unfed.  I'm looking for some hope today.
22 It's a big day in my life, so I guess that's about it.
23         THE COURT:  All right, sir.  Thank you.
24    Ms. Mazzanti, did you want to make a statement?
25         MS. MAZZANTI:  Yes, Your Honor.  Your Honor, the

government is requesting a sentence at the top of the guideline range, in particular because of the enhancement under 860a. That is a 20-year possible statutory enhancement above and beyond the 40-year end of the guideline range. Additionally, I would note that although the three-point enhancement under the guidelines is taken into account, when you calculate the guideline range under 2D1.1, it is not added on top of the career offender range. The career offender range is there simply to take into account the fact of the serious criminal history that Mr. Rose has. So the fact that it's not taken into account, the 860a enhancement is not taken into account by the career offender statute I believe warrants a sentence at the top of the range in and of itself.

This may be a different story if this was the first time that this had been an issue, cooking meth around children. But, as Mr. Rose said himself and as was mentioned during the plea colloquy, he told the police officers that he went to prison for allegedly setting his ex-wife's house on fire because they were cooking meth around his three-year-old daughter at the time. So this is not the first time this happened.

In addition, I understand that he put towels under the door. But as evidenced by the DEA cleanup costs, I don't think there is any dispute that that doesn't really do anything. The 860a enhancement, it is there for a reason. And the children are who were harmed by that. And we probably all, in the line

1  of work we do, we've seen the damaging effects of that on the
2  health of the children.
3       In addition, I would note that all of the criminal history,
4  it's not from ten years ago. It happened throughout the past
5  ten years. You know, there are charges from when he was 28 and
6  then 32. So this is not just something that is simply ten years
7  ago, he made some mistakes. He continued to make mistakes over
8  the course of the past ten years.
9       I think that that pretty much sums up the reason that I
10 think that a sentence at the top of the guideline range is
11 appropriate to take into account the 860a enhancement. Thank
12 you.
13            THE COURT: Thank you.
14      Mr. Rose, I, of course, listened carefully to your
15 statements, and I understand your position on this. And Ms.
16 Peters is always very persuasive in the arguments that she makes
17 on behalf of her clients. But I deem this to be a very serious
18 offense and not inconsistent with some past conduct on your
19 part. You have, you know, a tremendous criminal history. I
20 know you are aware of it, and I know a lot of it is drug
21 related. But there are lots of crimes here that concern me a
22 lot.
23      So I'm going to address all of these factors, and I think
24 the sentence I give you will be sufficient but no greater than
25 what is necessary here to meet the criteria. So the sentence

1  will be that you will be committed to the custody of the Bureau
2  of Prisons for a term of 200 months plus 12 months consecutive
3  for the violation of 21 U.S. Code Section 860a, for a total of
4  212 months.
5       And I do recommend that you participate in the RDAP
6  program; that is, the residential substance abuse treatment
7  program, and also educational and vocational programs and mental
8  health counseling during your incarceration.
9       This will be followed by a term of supervised release of
10 four years with these special conditions:  First, that you
11 participate under the guidance and supervision of the probation
12 officer in a substance abuse treatment program, which may
13 include testing, counseling, and residential treatment.  And you
14 shall abstain from the use of alcohol throughout the course of
15 treatment.  You shall cooperate in the collection of DNA as
16 directed by the probation officer.  You shall participate in
17 mental health counseling under the guidance of the probation
18 office.  You shall disclose financial information on the request
19 of the probation office.  That would include, but not be limited
20 to, loans, lines of credit, and tax returns.  And you should not
21 establish any new lines of credit.
22      There's no fine, because I don't think you could pay one.
23 But there is a $100 special assessment.  And there's also
24 restitution of $1,391.50, which is mandatory.  And that would be
25 payable to DEA Headquarters, reference appropriation No.

1  2009B-2345330-SCOPR240-2345330 to the attention of Betty Myers
2  at 8701 Morissette Drive, Springfield, Virginia, 22152.  During
3  your incarceration and supervised release or during
4  incarceration, you will pay 50 percent of all funds available to
5  you.  And during your residential reentry placement and your
6  supervised release, the payments will be reduced to 10 percent
7  of your gross monthly income with the interest requirement
8  waived.  And we will include in the judgment and commitment
9  order the forfeiture of the two firearms.
10       Any objection to the form of the sentence, Ms. Peters?
11          MS. PETERS:  No, Your Honor.
12          THE COURT:  Mr. Rose, you have a right to appeal both
13  from your plea, if you think it was obtained illegally, and also
14  from the sentence that I've just imposed.  And Ms. Peters will
15  explain to you if you intend to appeal you must do that within
16  ten days after we enter a written judgment on the sentence.  And
17  I'll remand you to the marshal then to serve the sentence.  Did
18  you want me to make a recommendation?
19          MS. PETERS:  No, Your Honor.
20          THE COURT:  That's fine.  We'll be in recess.
21      (Proceedings concluded at 3:04 p.m.)
22                      REPORTER'S CERTIFICATE
23    I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.
24
25  /s/Elaine Hinson, RMR, CRR, CCR     Date: July 9, 2010.
    United States Court Reporter

                        Elaine Hinson, RMR, CRR, CCR
                        United States Court Reporter